IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WAYNE MORRICAL,

                Plaintiff,                OPINION AND ORDER

v.

                                          20-cv-602-wmc

KILOLO KIJAKAZI, Acting Commissioner
For Social Security,

                Defendant.

      Pursuant to 42 U.S.C. § 405(g), plaintiff Wayne Morrical seeks judicial review of the Social Security Commissioner's final determination upholding an opinion that he was not disabled. On appeal to this court, plaintiff maintains that Administrative Law Judge ("ALJ") Deborah M. Giesen erred in two respects: (1) weighing the opinions of plaintiff's treating physician Dr. James Mullen; and (2) assessing plaintiff's subjective statements of his symptoms and limitations. For the reasons that follow, the court will reverse the denial of benefits and remand for further proceedings consistent with this opinion.

BACKGROUND[1]

**A. Overview**

      Plaintiff Wayne Morrical has at least a high school education, is able to communicate in English, and has past work experience as a tractor trailer truck driver. Morrical has not engaged in substantial gainful activity since March 12, 2016, the same date as his alleged onset disability date.

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #18.

Morrical applied for social security disability benefits on May 22, 2017, with a date last insured of September 30, 2021. With a birth date of May 20, 1971, Morrical was 44 years old upon on the alleged disability onset date, defining him as a "younger individual." 20 C.F.R. § 404.1563. Morrical claimed disability based on pain in his arms and hands. (AR 65.)

### B. ALJ Decision

ALJ Giesen held a video hearing on July 22, 2019, at which Morrical appeared personally and by counsel. On August 14, the ALJ issued an opinion finding that Morrical had not been under a disability within the meaning of the Social Security Act from his alleged disability onset date through the date of the decision. The ALJ first determined that Morrical had the following severe impairments: "chronic pain syndrome, rheumatoid arthritis, left rotator cuff tendinosis, disc degenerative disease of the cervical spine, and epicondylitis." (AR 15.) The ALJ considered other impairments, including bilateral sacroiliac joint arthritis, a ruptured left Achilles tendon, and a knee injury, but concluded that these impairments were not severe, which Morrical does not challenge on appeal.

Next, the ALJ considered whether Morrical's impairments or combination of impairments met or medically equaled various mental impairments Listings, concluding that they did not. (AR 16-17.) Here, too Morrical does not challenge the ALJ's conclusion.

At step four, the ALJ determined that even with these limitations, Morrical had the residual functional capacity ("RFC") to perform light work, but with the following additional exertional limitations:

> the claimant is limited to lifting and carrying no more than ten pounds; having no limitations in sitting, standing, or walking; never working around unprotected heights, open flames, or unprotected dangerous machinery; never climbing ladders, ropes, or scaffolds; never having concentrated exposure to extremes of cold; no more than occasionally overhead lifting; no more than frequently handling/fingering with the hands.

(AR 17-18.)

In crafting the RFC, the ALJ considered Morrical's testimony during the hearing that he had "pain in his hands so bad he cannot get dressed"; "is unable to work"; "does help take care of his son, including reading and playing somewhat, if his pain allows"; "rarely prepares meals"; "does minimal chores"; "has difficulty brushing his teeth"; "drives only when absolutely necessary"; "had difficulty pushing buttons" on his phone or computer; and that his "fingers swell and he has blister," among other statements. (AR 18.) The ALJ, however, concluded that these statements were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ then reviewed the medical evidence, dating back to mid-March 2016, at which Morrical began to complain about pain and tingling in his hands. Morrical was originally diagnosed with carpal tunnel syndrome and prescribed wrist splits, but he reported that the splints were not working and that his hand pain continued, in part due to blisters and skin cracking. The ALJ repeatedly noted that the exam records described Morrical as not being "in any acute distress"; nonetheless, the complaints of hand pain, decreased strength, in particular difficulty in holding objects and performing activities of daily living, and numbness or decreased sensation were consistent throughout these records. Moreover, the records consistently noted tenderness during physical exams, at least "some swelling," "positive

3

Tinel's sign" and "squeeze tests," and at times noted restricted range of motion,[2] (AR 19-24.) His treating physicians sought various tests to determine the etiology of his pain, but the etiology remained unclear, with rheumatoid arthritis neither ruled in nor ruled out. Moreover, x-rays and MRIs of the cervical spine also did not provide a "definitive explanation," but did note "multiple level degenerative disc disease of the cervical spine with some neuroforaminal narrowing." (AR 20.) Subsequent electrodiagnostic tests were also negative, and a neurologist noted a normal EMG and the lack of any "clear-cut neurological issues." (AR 20.) An x-ray and MRI of his left elbow, however, showed a small spur at the triceps insertion and minor degenerative changes. (AR 21.) Morrical treated his pain with medial, physical therapy and rehabilitation therapies. Beginning in October 2017, Morrical's reported hand and arm symptoms were described as "stable," but by May 2018, it was noted that he had a "flare-up because of increased activity." (AR 22.) Records into 2019, immediately preceding his hearing, continue to note hand pain.[3]

In summarizing the record, the ALJ noted:

> Although the claimant repeatedly complained of pain and difficulty performing activities of daily living, he later reported his pain and symptoms were stable. Imaging showed only mild deficits. Many providers were unable to discover the etiology. Physical exams did show some deficits, but these were not consistently seen. He reported some treatment helped him. There are some gaps in treatment, including going over a year without seeking a rheumatologist. His conservative treatment often did not change. Surgery was not recommended. There

---

[2] "Tinel's sign (also Hoffmann-Tinel sign) is a way to detect irritated nerves." "Tinel's sign," *Wikipedia*, https://en.wikipedia.org/wiki/Tinel%27s_sign.

[3] The ALJ also reviewed records discussing shoulder pain, including an MRI of his left shoulder which revealed rotator cuff tendinosis without a significant tear, among other findings. (AR 21.)

4

> was mention of an independent medical examination being scheduled but there is none in the record.

(AR 24.) Based on this review, the ALJ determined that the RFC she had crafted met the limitations described in the medical record.

Next, the ALJ considered the opinion testimony. First, with respect to the state agency medical consultants, the ALJ found these opinions persuasive because they are "consistent with the record, including the claimant not having consistent difficulties using his hands and no ongoing synovitis and swelling, despite reporting having infection or pus coming from his fingers, which did later resolve." (AR 24.) In a report dated July 16, 2017, Pat Chan, M.D., relied on Morrical's "excellent" penmanship to conclude that he did not "see much restrictions on gross and fine dexterity" and that "[t]he most we can restrict in terms of gross and fine fingering is to frequent but not constant bilat." (AR 73.) On reconsideration, Janis Byrd, M.D., in a report dated November 9, 2017, adopted Dr. Chan's opinion, finding Morrical limited to engaging in "gross and find fingering on frequent but not constant basis." (AR 83.)

The ALJ then reviewed the opinions of James Mullen, M.D., one of Morrical's treating physicians, who opined in April 2017, May 2017, and July 2017 that Morrical was "limited to 'sedentary work' and that 'no work is available for him with these restrictions.'" (AR 24.) The ALJ found these opinions unpersuasive because (1) "the issues of whether the claimant could work is an issued reserved to the Commissioner"; and (2) "there is no explanation such as documentation of a severe impairment that would limit his ability to stand/walk or sit, and no citation to any objective findings or laboratory/imaging results justifying such a limitation." (*Id.*) The ALJ also reviewed

Mullen's September 2018 medical source statement in which Mullen concluded that Morrical

> has anxiety that was aggravated by his inability to work; had fatigue as a side effect from medication; could sit up to 45 minutes at a time and stand up to 15 minutes at a time; could stand/walk less than two hours and sit about four hours in an eight-hour workday; would need to shift positions at will; needed to walk around every 60 minutes for five minutes at a time; would need unscheduled breaks of ten to fifteen minutes every one to two hours of work; . . . could lift/carry 20 pounds rarely and less than ten pounds occasionally; could occasionally twist and scoop; could rarely crouch/squat and climb ladders/stairs; had significant limitations with reaching, handling and fingering, including being able to grasp ten percent and finger ten percent and reach in front five percent and reach overhead two to three percent during a workday; would be off task at least 25 percent of a workday due to interference with his concentration and attention; was capable of low stress work; had good days and bad days; and would miss more than four days per month from work.

(AR 24-25 (citing 3F).) The ALJ, however, concluded that this statement was unpersuasive because "the limitations on sitting, standing, and walking are not explained, as the only impairments noted are in the upper extremities and Dr. Mullen's own treatment notes only address the claimant's upper extremity impairments"; "there is no explanation for the limitations on postural movements that do not involve the upper extremities, such as climbing stairs and stooping"; and "there is no explanation for off task limitation, except for the claimant's subjective statement that he has 'anxiety,' but there is no documentation of any treatment or evaluation for anxiety or any other medical impairment." (*Id.*)

The ALJ next determined that Morrical could not perform his past relevant work as a tractor trailer truck driver, because it was performed at a medium or heavy exertion level, but that there were other jobs in the national economy in significant numbers that Morrical

6

could perform, namely officer helper, information clerk, and routing clerk. (AR 25-26.) As such, the ALJ concluded that plaintiff was not under a disability from March 12, 2016, through the date of the decision.

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Specifically, findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Provided the Commissioner's findings under § 405(g) are supported by such "substantial evidence," therefore, this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Similarly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Thus, the court must review plaintiff's two challenges on appeal under this deferential, yet discerning, standard.

### I. Weighing of Dr. Mullen's Opinion

As described above, the ALJ concluded that Dr. Mullen's various statements were unpersuasive. For claims filed before March 27, 2017, ALJs are required to follow the treating physician rule, codified at 20 C.F.R. § 404.1527(c)(2). Under this requirement, if an ALJ does not give the opinion controlling weight, then he must decide what weight should be given by considering, to the extent applicable, specific regulatory factors. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). These factors include: (1) "the treatment relationship's length, nature, and extent"; (2) "the opinion's consistency with other evidence"; (3) "the explanatory support for the opinion"; and (4) "any specialty of the treating physician." *See id.* (citing 20 C.F.R. § 404.1527(c)). For claims filed after March 27, 2017, however, the agency does not defer to a treating physician's opinion or any opinion. Instead, the ALJ is required to consider the persuasiveness of each medical opinion -- regardless of its source -- focusing on supportability and consistency. *See* 20 C.F.R. § 404.1520c.

Here, Morrical filed his claim in May 2017, and, therefore, the "persuasive" rule should apply, but plaintiff contends that the court still should apply the treating physician because "the Seventh Circuit applied a treating physician rule approximately fourteen years before the Commissioner adopted a similar rule." (Pl.'s Opening Br. (dkt. #21) 15 (citing *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir. 1977); *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir. 1980)).) In response, the Commissioner directs the court to *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), in which the Supreme Court explained that "[a] court's prior judicial construction of a statute trumps

8

an agency construction otherwise entitled to *Chevon* deference *only if* the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 982 (emphasis added); *see also Schisler v. Sullivan*, 3 F.3d 563, 569 (2d Cir. 1993) (explaining that "Section 405(a) grants the Secretary authority to establish . . . regulations that are binding on the courts, despite the fact that the courts had earlier established different rules in the absence of regulations directly on point"). While plaintiff attempts to argue in his reply, for the first time, that the abandonment of the treating physician rule by the Administration was arbitrary and capricious because "giving treating physicians controlling rates resulted in high remand rates" (Pl.'s Reply (dkt. #25) 8), plaintiff fails to develop this argument or cite anything in support. Moreover, as the Commissioner explains in her opposition brief, the SSA relied on a commissioned report in drafting the revised regulation, and the new regulation is not contrary to the Social Security Act. (Def.'s Opp'n (dkt. #22) 8-9.)

While the Commissioner's position appears to have merit, as Judge Peterson also recognized recently in *Olson v. Saul*, No. 20-CV-672-JDP, 2021 WL 1783136, at *3 (W.D. Wis. May 5, 2021), the court need not resolve plaintiff's challenge, because even under the persuasive standard, which arguably creates a higher bar for challenging an ALJ's treatment of a treating physician, the court agrees that remand is required. In other words, the court concludes that the ALJ's failure to provide *any* reason -- much less a logical bridge -- for rejecting Mullen's opinions about fingering and handling warrants remand.

As set forth above, Dr. Mullen in his September 2018 medical source statement set forth a slew of restrictions. (AR 24-25 (citing 3F).) In finding this opinion unpersuasive,

9

the ALJ provided two core reasons. First, the ALJ concluded that Dr. Mullen failed to substantiate his limitations concerning the lower extremities, in particular limitations on sitting, standing and walking and certain postural movements, because his own treatment notes are limited to treating upper extremity impairments. Second, the ALJ rejected Dr. Mullen's limitations based on anxiety -- namely, that he would be off-task 25% of a workday -- because Mullen did not treat Morrical for anxiety, nor is there any documentation of treatment of evaluation of anxiety. (AR 25.) Both of these reasons are sound reasons for rejection *portions* of Mullen's report. Critically, however, Dr. Mullen provided an opinion about Morrical's upper extremity limitations -- which the ALJ noted *was* an area for which Dr. Mullen provided treatment -- and the ALJ failed to provide any explanation for her rejection of this part of his opinion. In particular, Dr. Mullen limited Morrical to fingering and handling no more than ten percent of a workday. In contrast, the ALJ determined that Morrical could engage in frequent (rather than constant) handling/fingering.

Indeed, during the hearing, the ALJ asked the vocational expert if a person limited to light work with the other exertional limitations described in the RFC above was instead limited to *occasional* handling and fingering, could they still perform the three identified jobs, and the VE responded, "it would eliminate all light unskilled work." (AR 60.)

Defendant contends that the ALJ need not conduct a "line-by-line" discussion of a medical opinion, citing *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995), for support. But, in *Diaz*, the Seventh Circuit simply explained that "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence"; the court, however,

10

still required an ALJ to "articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Id.* Here, the ALJ provides no basis for the court to understand her rejection of Dr. Mullen's limitation on handling and fingering, which is especially glaring in light of her review of the medical record that was focused on his hand pain. Moreover, as plaintiff identifies, in *Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009), the Seventh Circuit specifically faulted an ALJ for failing to consider certain limitations described by a treating physician, explaining "[a]n ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'" *Id.* at 678. As such, the court agrees with plaintiff that remand is warranted for further review of Dr. Mullen's September 2018 medical report.[4]

## II. Credibility Assessment

Having found a basis for remand, the court will address briefly plaintiff's second challenge on appeal. Tied to the first challenge, plaintiff also contends that the ALJ erred in assessing Morrical's statements about the level of his pain and limitations caused by his hand pain. If the ALJ had a basis to conclude that Morrical is malingering, then perhaps that would serve as a basis for rejecting Dr. Mullen's specific opinions. Here, however, the ALJ appears fixated on the fact that Morrical's physicians could not determine the etiology of his pain. From that, it appears that she is inferring that it was malingering, but there is no actual finding in the ALJ's opinion that Morrical is faking his consistent and frequent

---

[4] While not specifically raised by the plaintiff, the court also is troubled by the ALJ's statement that a consultant examination was scheduled, without probing as to why it had not taken place. This case is a glaring example of a case where an independent medical consultant examination would be helpful.

11

complaints of hand pain in the medical record. Specifically, there is no references to treating physician's calling into question the veracity of Morrical's complaints; instead, the records simply reflect that they are puzzled by its source.

Moreover, the record reflects that Morrical was diagnosed with chronic pain syndrome -- a diagnosis the ALJ purportedly accepts in determining that it is one of his severe impairments. Plaintiff represents in his brief, and the Commissioner does not challenge, that this diagnosis is based "heavily upon a patient's self-report for its accuracy and requires that all other diagnoses be ruled out." (Pl.'s Opening Br. (dkt. #21) 17.) The Seventh Circuit instructs that "[i]n assessing a claimant's credibility, the ALJ must consider subjective complaints of pain if the claimant can establish a medically determined impairment that could reasonably be expected to produce the pain." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Here, the ALJ appears to primarily reject Morrical's statements based on the lack of objective evidence, which is not a valid basis given the diagnosis of chronic pain syndrome. As such, on remand, the ALJ can also reevaluate Morrical's subjective statements.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Wayne Morrical's application for social security disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2) The clerk's office is directed to enter judgment in plaintiff's favor and close this case.

Entered this 29th day of September, 2021.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge